# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00343-CR

**Daniel Lynn Keeton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
### NO. 2006-058, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Daniel Keeton guilty of aggravated assault with a deadly weapon, *see* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2006), and the trial court assessed punishment at 40 years' confinement. In two issues, appellant complains that the trial court improperly failed to instruct the jury on the lesser-included offense of assault and that he was denied effective assistance of counsel. We affirm the judgment of conviction.

### BACKGROUND

The evidence at trial showed that appellant developed a relationship with Tracy Garza and lived with her on and off for nine months in 2005. Garza testified that when her fourteen-year-old son and twelve-year-old daughter went to live with their father, appellant became abusive towards her.

In September 2005, Garza owned a cleaning company that provided custodial services to businesses. On the evening of September 28, appellant was helping Garza provide cleaning services to one of her customers, an advertising agency in Austin. In connection with her cleaning services, the business had afforded Garza access to a refrigerator in the business that contained beverages for office parties. At Garza's request, appellant retrieved a root beer for her from the refrigerator and a beer for himself, which they started to drink on the way home after work. When they arrived home at approximately 11:30 p.m., appellant—apparently unprovoked—threatened to break the beer bottle from which he was still drinking and cut Garza with it. Garza was sitting on their bed when appellant threatened her. She grabbed a Maglite flashlight located next to the bed and held it in a manner to defend herself. Garza testified that she and appellant remained in a standoff in the bedroom for the next several hours with appellant threatening her with the bottle and Garza holding the flashlight in a defensive posture.

Garza testified that she took appellant's threat seriously because he had hurt and threatened her many times before, and she was afraid for her life. At the time, Garza's twelve-year-old daughter was asleep in the house. Garza testified that appellant had told her on prior occasions that if she ever told her family about the abuse, he would "hurt them or kill them" and that "[i]f I ever called the police, he would have a shoot-out with them. He would never go back to a situation [in prison] again."

The confrontation ended when it was time for Garza to awaken her daughter and take her to school. Garza testified:

2

It was time to get my daughter up and ready for school. And I got up and got my daughter ready for school. And he never did anything in front of anyone. So I knew that, as long as she was awake in there, I was safe. So I got her ready for school and I took her to the bus stop. When I returned home, I told him to be gone by the time I got back from work that night or I was going to call for some help.

Garza then left for work. Garza testified to injuries she incurred that evening and on prior occasions, including bruises, scratches, and a bite mark on her face. The State introduced photographs showing the injuries on her chest, neck and face that were taken a "few days before the incident" by a neighbor and also other photographs taken by her daughter in the months prior to the incident. When Garza returned from work that night and learned from her neighbor that appellant was still in the house, she called 9-1-1 and reported the episode. Appellant was arrested and indicted for aggravated assault with a deadly weapon for intentionally and knowingly threatening Garza with imminent bodily injury with a beer bottle. A jury found appellant guilty and this appeal followed.

## DISCUSSION

In two issues, appellant complains that (i) the trial court erred by refusing to instruct the jury on the lesser-included offense of assault because the evidence shows that appellant did not use a deadly weapon to assault Garza and that, if he did use a beer bottle, it did not constitute a deadly weapon, and (ii) he was denied effective assistance of counsel.

### *Lesser-Included Offense*

In his first issue, appellant complains that the trial court erred in not instructing the jury on the lesser-included offense of assault, arguing that either appellant did not use the beer bottle to assault Garza or, if he did use the beer bottle, it did not constitute a deadly weapon. He urges that

3

the jury could have properly convicted appellant only of the lesser-included offense. Appellant does not challenge the sufficiency of the evidence.

The parties agree that assault is a lesser-included offense of aggravated assault; it is elevated when the defendant uses or exhibits a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.01–.02 (West Supp. 2006). A defendant is entitled to an instruction on a lesser-included offense if (1) proof of the charged offense includes the proof required to establish the lesser-included offense, and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001); *Moore v. State*, 999 S.W.2d 385, 403-04 (Tex. Crim. App. 1999). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994) (citing *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 919 (1993)). The State argues that appellant did not meet the second prong.

A person commits the offense of misdemeanor assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a)(1). A person commits the offense of aggravated assault if he commits misdemeanor assault and either (i) causes serious bodily injury to another, or (ii) uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a). Therefore, in order to be entitled to an instruction on misdemeanor assault, there must have been some evidence that appellant did not use or exhibit a deadly weapon.

Garza testified that appellant threatened to break the bottle and cut her with it and leaned over toward the bed to break it on the wooden portion of the bed. She grabbed a flashlight

and held it in a defensive posture. Garza testified: "We sat there all night in a standoff, him threatening to cut me and me threatening to defend myself with the Mag light." Garza testified that, on the morning of the incident, he scratched and hurt her as he attempted to restrain her from leaving the house. In addition, Garza testified that a week prior to the beer bottle incident appellant had bitten her on the face. Because appellant had harmed her previously, she believed he was capable of carrying out his threats to kill and harm her. If the jury believed Garza's testimony, appellant used the bottle in a manner capable of causing serious bodily injury, that is, as a deadly weapon.

Appellant testified on his own behalf, denying that any assault had occurred. He testified that Garza became mad when he had not fixed her car, that she told him their relationship would not work out, and that she wanted him out of the house. Garza told him he had to leave and stood over him with the flashlight as though she was going to hit him as he packed his clothes: "[She] leaned forward and raised up like she was fixing to konk me on the head with it." He testified that in response he picked up the empty beer bottle that he had finished that night and put it on his shoulder. When Garza asked what he was going to do with the beer bottle, he testified that he responded, "Nothing. I'm just showing you how stupid you look." And he set the bottle down. Appellant testified that he did not leave that morning because his foot was swollen and he could not get a boot on his foot. Appellant denied that he had threatened Garza in any way.

The proof also showed that appellant wrote letters to the district attorney stating that "I would like to get this over" without costing "the county any more than it has to," and that "I am guilty of abuse on Tracie Garza." But he attributed the injuries to his attempt to restrain Garza from hitting him with whatever weapon she would use to "come at" him, including axes, a knife, a

5

wooden club, pepper spray, and a pistol. Attributing the episode of September 28 to a "love spat," appellant stated that he was ashamed that he had hurt Garza and promised never to hurt her again. In another letter, he acknowledged he was "guilty of abuse" of Garza, that he had been raised in an abusive home, and that he would agree to counseling and treatment for his "problem."

At the charge conference, defense counsel requested an instruction on the lesser-included offense, reasoning that "a reasonable jury could find that a threat was made, but not find that the beer bottle constituted a deadly weapon under the facts presented in this case." The trial court denied the request, concluding that there was no evidence to show that anything other than aggravated assault had occurred: "The Defendant said that it didn't happen and the complaining witness said that it did. And I haven't heard anything to say that it was anything else but."

The record supports the trial court's conclusion. Appellant denied the conduct of which he was accused and particularly that he had used or exhibited the beer bottle to threaten Garza. The record does not contain evidence that would permit a jury to rationally find that if he was guilty he was only guilty of the lesser-included offense. If believed by the jury, the testimony would have negated the requisite elements of both aggravated assault and the lesser-included offense of assault, and would have supported an acquittal on both offenses. The testimony did not establish that if he was guilty, he was guilty only of the lesser offense of assault. Appellant was therefore not entitled to an instruction on the lesser-included offense of assault. We overrule appellant's first issue.

### *Ineffective Assistance of Counsel*

In his second issue, appellant contends that he was denied effective assistance of counsel. Specifically, appellant asserts that his trial counsel were ineffective because they permitted

6

appellant's alleged history of abuse to permeate the trial. He contends that his trial counsel failed to object to the admission of prior episodes of domestic violence, including photographs of injuries from other alleged acts of abuse, letters to Garza and the district attorney describing his own abuse as a child and admitting abuse of Garza, and the testimony of a domestic violence expert who reviewed appellant's letter to Garza to determine whether it reflected a cycle of domestic abuse. Appellant asserts that Garza's credibility was bolstered by the evidence of other episodes of domestic violence and that appellant's credibility was undermined.

For a claim of ineffective assistance of counsel to prevail, a defendant must first show that his counsel's performance was deficient and that, if deficient, this performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mata v. State*, No. PD-1724-04, 2007 Tex. Crim. App. LEXIS 695, at *10-11 (Tex. Crim. App. June 6, 2007); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the

7

failings of trial counsel." *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *see also Mitchell*, 68 S.W.3d at 642 ("The reasonableness of counsel's choices often involves facts that do not appear in the appellate record. A petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims.").

In the absence of evidence of trial counsel's reason for the challenged conduct, we assume a strategic reason for trial counsel's conduct, if one can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it") (quoting 3 Wayne R. LaFave et al., Criminal Procedure § 11.10(c) (2d ed. 1999) and citing *Thompson*, 9 S.W.3d at 814)). Appellant did not object to the introduction of the complained-of evidence, and the evidence is arguably admissible to show motive, opportunity, or intent. *See* Tex. R. Evid. 404(b). Here, the evidence may have been relevant and admissible to provide context for appellant's spontaneous conduct on the night in question, Garza's response to appellant's threats, and to respond to appellant's testimony of denial and that he was the one threatened by Garza on that and prior occasions. We conclude that the identified acts or omissions were not outside the wide range of professionally competent assistance. *See Mata*, 2007 Tex. Crim. App. LEXIS 695, at *10.

We have a silent record before us on trial counsels' conduct and trial strategy. Because (i) we presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, (ii) the appellate record in this case does not

8

evidence the reasons for trial counsels' conduct, (iii) all of the alleged deficiencies could have been the subject of trial strategy, and (iv) the evidence was relevant and arguably admissible, we overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   June 19, 2007

Do Not Publish

9